JOHN C. PUSCHMAN, Respondent, v. THE HARTFORD
   LIFE AND ANNUITY INSURANCE COMPANY,.
   Appellant.

St. Louis Court of Appeals, February 25, 1902.

1. **Insurance: BENEFIT SOCIETY: SUSPENSION OF MEMBERS:
   REINSTATEMENT OF MEMBERS IN SOCIETY.** When a mem-
   ber of an insurance benefit society fails to pay the assessments re-
   quired to be paid, and his insurance is suspended, and where, by
   the terms of the policy, issued for such insurance, and by the laws.
   of such society, he has the right of reinstatement upon complying
   with the by-laws of said society, and where he does comply with
   such by-law, and the terms of his said policy, and the said society
   arbitrarily refuses to reinstate the said member, he may elect to de-
   clare the contract at an end, and recover all the premiums paid by
   him upon said policy.

3. ———: **CONTRACT OF: RIGHTS OF BENEFICIARY TO BE
   REINSTATED.** In the case at bar, the provision of the policy
   of insurance in respect to reinstatement of a member after forfeit-
   ure of the certificate of insurance, is a part and parcel of the con-
   tract of insurance and entitled the plaintiff to reinstatement if his
   medical examination was satisfactory to the insurance company.

4. **Medical Examination: RECORD OF: EVIDENCE.** And in the
   case at bar, there is no evidence in the record that plaintiff's exam-
   ination was ever submitted to the board of directors of the com-
   pany, to its board of medical examiners, or to any board of officers.
   authorized to pass upon the examination.

Appeal from Phelps Circuit Court.—*Hon. L. B. Woodside,*
                     Judge.

AFFIRMED *(conditionally).*

STATEMENT OF THE CASE.

The appellant is a mutual life insurance company doing·
business on the assessment plan.   Each policy-holder is desig-

nated as a member of the association. To become a member one is required to pay into the company, on taking out a policy of insurance, a membership fee of three dollars upon each one thousand of insurance and to pay this fee annually, and also to pay on each one thousand, when he receives the certificate of insurance, ten dollars to the safety-fund department maintained by the company. The interest from this safety fund is applied twice per annum to the payment of dues and assessments on the members. The mortality calls, or assessments, are made due on the first day of March, June, September and December of each year. In respect to these the certificate of insurance provides as follows:

"*Giving Notice.*—The quarter days for the payment of mortality calls shall be the first day of March, June, September and December in each year, notices of which will be dated and mailed thirty days before such dates. No mortality call to fall due on the first quarter day following the date of this contract can be made. A notice directed to the address of the member, or other person designated by the member, appearing at the time on the company's books, shall be a sufficient notice of any required payment, and a certificate of the secretary supported by affidavit of the person whose duty it was to perform the service, of such addressing and of mailing of notice in postoffice at Hartford shall be taken and admitted as conclusive evidence of such addressing and mailing and be admitted as conclusive proof of due notice to each and every person interested herein. But if the person addressed as aforesaid shall fail to receive a notice of mortality call before the fifteenth day of February, May, August and November in each year, nevertheless this contract shall not discontinue if an amount equal to the amount of the last paid mortality call be transmitted to and received by the company's secretary on or before the fifth day of the calendar month next following the month in which the aforesaid failure of notice shall have

occurred. (If failure of notice of first mortality call occurs, then compute for such purpose an amount, for each $1,000 indemnity, equal to twice the ratio set in the table hereon against the member's age.) Notices given while any payment that has fallen due hereon shall be unpaid, are to be understood only as notices to reinstate membership and shall not be held to extend maturity of such unpaid payments nor as waiving proof that the member is alive and in good health, certificate of which shall be tendered with all applications for reinstatement; nor shall payments therefor be effective to reinstate membership unless they, together with such health certificate to the company's satisfaction, shall be received at the company's home office before the member's death."

Respondent was originally insured in the appellant company in August, 1889, in the sum of two thousand dollars, evidenced by one certificate of insurance. This policy or certificate was carried by the company until the thirty-first day of January, 1895, when, on the application of respondent, the policy was retired and a policy in the sum of one thousand dollars was issued. This policy was carried until the twentieth day of December, 1898, when it was cancelled for the non-payment of call number eighty-one. Calls on this policy were made on the first day of February, May, August and November and payments were due thirty days later. These calls, or assessments, were to cover for each quarter the actual death losses accrued up to the date of the call.

The last dividend paid to respondent from the safety fund was seventy-five cents and was credited to call number eighty, which was due and paid on September 5, 1898. When call number eighty was paid respondent received from the company two receipts for the amount specified in the notice of the assessment bearing the same date but received at different dates. The respondent was a German and was unable to read or write English.

When call number eighty-one was made he asked a

friend what was meant by the second receipt for the money paid on call number eighty and was told that it must be a dividend from the security fund. Under this impression he transmitted the receipt to the company believing that it would be received in payment on his assessment. He was informed by the secretary of the company that the receipt did not represent a dividend and that he would have to pay the money. The secretary was then asked to explain why two receipts were sent for the payment of call number eighty.

During this correspondence the time to pay call number eighty-one was extended to December twentieth. After correspondence whereby respondent was made to understand that he would be required to pay call number eighty-one in money, he remitted the assessment (twelve dollars and ninety-nine cents), but it was not received by the company until the expiration of the extension of time in which the payment might be made and the company returned the remittance and informed respondent that his policy had been forfeited by the following letter:

"January 4, 1899.

"Hartford Life Insurance Company, Hartford, Conn.

"Mr. John C. Puschman,

"St. James, Mo.

"Dear Sir:—We are in receipt of your tender of payment to reinstate policy No. 121134, but as payment was due at this office on December 1, 1898 (the twenty additional days of grace also having expired), before the reinstatement of your policy can be considered, it will be necessary for you to submit to a re-examination at the hands of Dr. C. H. Fulbright of your town, the company to pay the necessary fee.

"It will also be necessary for you to execute the enclosed application for reinstatement, which includes health certificate.

"Upon the coming to hand of the application for reinstatement, which you will forward directly to this company

properly executed, payment which we return herewith, making a total remittance of $13.49, the reinstatement of your policy will be given prompt consideration, and if approved, remittance will be applied, your policy placed in good standing and receipt sent.

"It is essential that this matter have your immediate attention.

"Pending final action in this matter we deem it advisable to return herewith your tender consisting of postal money order No. 6388 dated at Saint James, Mo., December 30, 1899, payable to the order of the Hartford Life Insurance Company, for $12.99.

"The above amount of $12.99 includes fifty cents to cover the cost of the registered second notice and the extended insurance.

"Yours truly,

"C. H. BACALL, Secretary."

With this letter was inclosed blank application for reinstatement. Respondent immediately on receipt of this letter filled out the blank application for reinstatement and appeared before Dr. Fulbright, as requested, and underwent the examination required. The following is the conclusion of Dr. Fulbright, medical examiner:

"23.  Do you recommend this risk?  Yes."

"Dated at St. James, Mo., the seventh day of January, 1899.  I hereby certify that the foregoing statements are correct, according to my knowledge and belief, and I have no interest in the avails of any policy which may be issued on the life of the above named applicant.  I graduated at (give school and date of graduation).

"C. H. FULBRIGHT,

"Signature of Medical Examiner."

And the following is the recommendation made by him:

"I recommend a reduced amount in Mr. Puschman's policy not that he has any special diseased condition at present, but he seems to me that he is failing quite fast in the past two years. I did not explain about his calling on the doctor so often, his hernia gave him a great deal of trouble for a while, he is now wearing a suitable truss and seems all right. He is a fair risk with reduced amount."

Respondent after signing the application for reinstatement and undergoing the examination immediately transmitted his application for reinstatement and the examiner's report together with thirteen dollars and forty-nine cents required to be paid to reinstate his policy in the company.

The appellant, on January 12, 1899, after receiving the application for reinstatement, wrote respondent as follows:

"Mr. John C. Puschman,

"St. James, Missouri.

"Dear Sir:—Your application for the reinstatement of your policy is at hand, together with money order for $12.99 and $0.50 respectively. I very much regret, however, that the company is not justified in approving this examination, and we therefore return your remittance for the above amounts, the policy being now cancelled.

"Again regretting the circumstances, I remain,

"Yours truly,

"CHARLES H. BACALL, Secretary."

Across the face of the medical examiner's report was stamped the following: "Disapproved. C. H. B.," C. H. B. being the initials of Charles H. Bacall, secretary of the appellant.

Plaintiff introduced receipts numbers two to twenty inclusive. Number two being dated June 1, 1890, and number twenty dated December 1, 1895, amounting to two hundred

and sixty-seven dollars and four cents, and introduced receipts numbers twenty-one to thirty-five, inclusive, number twenty-one being dated March 1, 1895, and number thirty-five September 1, 1898, aggregating one hundred and forty-one dollars and fifty-eight cents, which receipts were in payment of mortality assessments made by appellant on his policy, or policies, of insurance.

The suit is to recover the mortality assessments paid by respondent to the appellant. The issues were submitted to the court without the intervention of a jury. At the close of the evidence the court declared the law as follows for the plaintiff:

"When a member of an insurance benefit society fails to pay the assessments required to be paid, and his insurance is suspended, and where, by the terms of the policy, issued for such insurance, and by the by-laws of such society, he has the right of reinstatement upon complying with the by-laws of said society, and where he does comply with such by-laws and the terms of his said policy, and the said society arbitrarily refuses to reinstate the said member, he may elect to declare the contract at an end, and recover all the premiums paid by him upon said policy," and refused all declarations of law asked by the appellant, found the issues for the respondent and assessed his damages at four hundred and twenty dollars and fifty-two cents and entered judgment for that amount.

After unavailing motions for new trial and arrest of judgment defendant appealed.

*Stockwell & Lamb* for appellant.

(1) Under the terms of the policy in suit, it lapsed upon a failure on the part of the assured to pay call No. 81 on December 20, 1898, and appellant company properly cancelled the policy. Reichenbach v. Ellerbe, 115 Mo. 588; Gatterman v. Ins. Co., 1 Mo. App. 300; Sick v. Ins. Co., 79 Mo App. 609;

Scheele v. Society, 63 Mo. App. 277; L. Klein v. Ins. Co., 104 U. S. 88. (2) The policy having been properly cancelled and declared lapsed and void, in conformity with its provisions, no action can be maintained for all the premiums paid with interest. The demurrer offered at the close of plaintiff's testimony should have been sustained. The petition does not contain facts sufficient to constitute a cause of action. Sick v. Ins. Co., 79 Mo. App. 372; Dickey v. Life Assn., 82 Mo. App. 372. (3) The claim of respondent for all premiums paid with interest is unconscionable. He had the protection of a policy of $1,000 from the date of issue until the date of lapse. This was an assessment company and except the safety fund and expense element, was carried at the exact cost determined by the experience of the company. The cost of carrying a policy at any given age can be exactly determined from the tables. Respondent allows nothing for the years his policy was carried but seeks to recover everything paid with interest, and leave the appellant without a cent, for the expense of carrying his risk for the years during which it was in force. As we said in the second subdivision of this argument, a recovery of this character has been sustained for a wrongful cancellation of a policy in. violation of its express terms. This is an extreme measure and its application should not be extended to doubtful cases. It should be remembered that, if under the law, respondent was entitled to reinstatement (which we by no means admit), the courts of the country will compel a reinstatement. Lorell v. Life Ins. Co., 111 U. S. 274; Life Ins. Co. v. McCormick, 19 Ind. App. 49, 125 Ind. 84; Day v. Ins. Co., 45 Conn. 480; Brooklyn Ins. Co. v. Wick, 9 Ill. App. 358; Clemitt v. Life Ins. Co., 76 Va. 355.

*Thos. M.* and *Cyrus H. Jones* for respondent.

(1) The finding of the court sitting as a jury will not be disturbed where there is substantial evidence to support it.

Rice v. McClure, 74 Mo. App. 383; Rogers v. Warren, 75 Mo. App. 271; State ex rel. v. Staed, 143 Mo. 248. The right of reinstatement is a right under prescribed conditions; this right is a part of the contract so recognized by the fifth clause of "Conditions and Agreements" on the back of the policy, and also by every quarterly mortality call sent to respondent by appellant, and a member can not be deprived of this right without cause at the whim or caprice of the company. Dickey v. Life Ins. Co., 82 Mo. App. 372; Suess v. Life Ins. Co., 64 Mo. App. 1; 2 Bacon on Benefit Societies (2 Ed.), sec. 385a; McKee v. Life Ins. Co., 28 Mo. 383. (2) The petition in this case states facts sufficient to constitute a cause of action: first, it avers the cause of the trouble between plaintiff and defendant; second, it avers the requirement of the health certificate and medical examination and that plaintiff complied with same and that said medical examination showed plaintiff to be in a sound state of health; that the health certificate was forwarded to the defendant with the amount of quarterly dues, quarterly mortality call and the costs of the registered second notice, but that the defendant nevertheless refused to reinstate plaintiff in violation of condition 5 of the policy of insurance. Petition therefore stated facts sufficient to constitute a cause of action.   Dickey v. Life Ins. Co., 82 Mo. App. 372; Suess v. Life Ins. Co., 64 Mo. App. 1; 2 Bacon on Benefit Societies (2 Ed.), sec. 376.   (3) The appellant's demurrer was properly overruled.   The contract of insurance was made upon the application of the respondent.   It was issued to him as the assured; the premiums were paid by him and it was his interest in his own life that supported the policy.   McDonald v. Life Ins. Co., 68 N. H. 4; 73 Am. St. Rep. 551.

BLAND, P. J.—I.   The provisions of the policy of insurance (set out in the foregoing statement of facts) in respect to reinstatement of a member after forfeiture of the certificate of insurance, is a part and parcel of the contract of insurance

and entitles the respondent to reinstatement if his medical examination was satisfactory to the company. There is no evidence in the record that his examination was ever submitted to the board of directors of the company, to its board of medical examiners, if it had any, or to any board of officers authorized to pass upon the examination. The stamp of its rejection, followed by the initials of the secretary of the company, is no evidence that the application for reinstatement was ever rejected by the company.

Neither the articles of the association nor the by-laws of the appellant were introduced in evidence. We are, therefore, left in the dark as to what agency of the corporation was committed the duty of passing upon applications for insurance or reinsurance after forfeiture. It is to be presumed that there was some competent authority to pass on these applications. The clerk of the corporation, whose duty as such was merely clerical and not administrative, is not to be presumed to have had authority to pass upon an application for insurance, nor to have exercised that judgment in respect to the condition of an applicant's health; that could only be exercised by a board of medical examiners or a physician. It does not appear, therefore, that respondent's application for reinsurance was rejected by the corporation or by anyone who had authority to reject it and, hence, there is no evidence that respondent was not entitled to reinsurance under the terms of his contract as set out in the policy. The trial court also found that defendant acted in bad faith in respect to the application for reinsurance. Under this state of facts respondent's right to sue and recover the full amount of the assessments he had paid on the one thousand dollars of insurance is settled by the case of Dickey v. Cov. Mut. Life Ass'n, 82 Mo. App. 372.

II. The certificate of insurance is dated January 31, 1895. Respondent was permitted, over the objection of the appellant, to introduce receipts in payment of calls from June 1, 1890, to September 1, 1894, inclusive, and the recovery in-

cluded these receipts. The contention of appellant is that this was error.

The evidence is that there was at first a policy for two thousand dollars; that on January 31, 1895, respondent surrendered that policy and with it one thousand dollars of insurance and took a new policy for the remaining thousand. The new policy was not, therefore, a new insurance or a reinsurance, but was a continuation of the original insurance as to the one thousand dollars.

We think, therefore, that it is clear that respondent was entitled to recover all the assessments he had paid for this insurance of one thousand dollars from the date of the old certificate, August, 1889. It is clear from the evidence of respondent, as well as from a comparison of the receipts given prior to January, 1895, with those given after that date, that the receipts prior to January, 1895, were for assessments on the policy for two thousand dollars. The respondent, therefore, is entitled to recover but one-half of the amount of these receipts together with what he paid thereafter as assessments on the second policy. The amount of the assessments paid on the two thousand dollars was two hundred and forty-one dollars and forty cents, one-half of this amount, or one hundred and twenty dollars and seventy cents, represents the excess of the recovery.

It is therefore considered that unless respondent within ten days from this date enters a remittitur in this court of the sum of one hundred and twenty dollars and seventy cents of his judgment, the judgment will stand reversed and the cause remanded; if the remittitur is entered within ten days the judgment will stand affirmed. *Barclay, J.*, not sitting; and *Goode, J.*, concurs.