JOE E. DELOZIER AND RENA DELOZIER, DEFENDANTS IN ERROR, v. FARMERS' MUTUAL FIRE INSURANCE COMPANY OF HENRY COUNTY, PLAINTIFF IN ERROR.—157 S. W. (2d) 568.

Kansas City Court of Appeals. January 5, 1942.

850

*Vance Julian* and *Kelso Journey* for defendants in error.

*Barkley M. Brock* and *Wilson & Thatch* for plaintiff in error.

CAVE, J.—The plaintiffs brought suit to recover upon a fire insurance policy issued to them by the defendant covering their residence property. The petition is in usual form. Defendant's answer admitted that it was a farmers' mutual fire and lightning insurance company, organized under the laws of the State of Missouri, and that on or about the 31st day of January, 1935, it issued the policy sued on covering a certain frame dwelling; and that such dwelling was totally destroyed by fire on July 20, 1936.

Defendant plead that on May 1, 1936, its Board of Directors levied an assessment, No. 75, in the sum of 20c on the $100 valuation; that notice of this assessment was mailed to the plaintiffs on the 6th of June, 1936, and that said assessment became due and payable on the 6th day of July, 1936, but that the plaintiffs failed, neglected and refused to pay such assessment and that under the terms and provisions of said policy, the insurance became delinquent and the policy was void and of no force and effect after July 6, 1936, and was at the time of the destruction of the building by fire, void and of no force and effect. In their reply, the plaintiffs denied that any written notice of an assessment was given to them on June 6, and denied the receipt of any notice of such assessment. The reply further alleged that the purported assessment No. 75 as of May 1, 1936, was illegal under the constitution and by-laws of the defendant, and therefore, the plaintiffs could not be expelled from said company or their policy cancelled for failure to pay an illegal assessment.

The cause was tried to a jury and resulted in a verdict for the plaintiffs in the sum of $700. This case reaches this court on a writ of error. We will continue to refer to the parties as plaintiffs and defendant.

The issuance of the policy, the ownership of the property insured, and the value thereof, were all admitted.

In its assignments of error, the defendant sets out three grounds, but under its points and authorities, the three are consolidated into two, and are stated as follows:

"1. The court erred in refusing defendant's instruction at the close of the evidence, instructing the jury that the assessment was legal.

"2. and 3. The question of the legality of the assessment was a question of law, and, therefore, should not have been submitted to the jury. The court erred in not passing on this question."

At the close of all the evidence, the defendant requested the court to instruct the jury as follows:

"Comes now defendant at the close of all the evidence and requests the court to instruct the jury that the assessment No. 75 as levied by defendant as of May 1, 1936, was a legal assessment."

This request was refused and the defendant excepted. The court then submitted the case to the jury on three instructions requested

by the plaintiffs and two requested by the defendant. There being no objections to the form of the instructions given, we will consider the one point urged; that the court should have declared the assessment legal as a matter of law, and should not have submitted that issue to the jury, as was done by plaintiffs' Instruction No. 2.

The plaintiffs made a *prima-facie* case and rested. The defendant then undertook the burden of proving the making of assessment No. 75 and its legality under its constitution and by-laws. Article VII of the constitution, under the head of "Sources of Income," among other powers of the board, authorizes assessments to be made "as may be required (1) to pay accrued liabilities, or (2) to meet anticipated needs of the company for the ensuing period not exceeding one year, or (3) to add to or restore the safety fund, or for all three purposes." Subsection 2 of Section 3 of the By-laws provides that assessments may be made as "may be necessary for losses and expenses and may include reasonable additions to the safety fund."

These are the provisions of the constitution and by-laws under which the defendant asserts its right and authority to make the assessment involved. The record entry of the Board made at the time of the assessment is "Board ordered a twenty-cent assessment on all policies in force May 1, 1936." It is apaprent from such order that there was no designation of the purposes for which said assessment was made. The evidence discloses that all the monies received from assessments and other sources went into one general fund, and there was no separate designated "safety fund." It is true approximately $3500 of its funds was invested in bonds, but concerning that fund the secretary of the defendant testified:

"We had about $3500 in bonds. We put that up so we would have what the Federal Land Bank requires of us, to keep enough on hands at all times to cover our highest risk of $3500, and we had to keep enough money in the bank so we would never run short of $3500. . . . There is really nothing on our records to show there is a safety fund. That was our intention when we bought the bonds, to put them up there for a safety fund. We didn't have a safety fund according to the constitution."

He also testified that the Board had the right to cash any of those bonds and pay losses and that such had been done. The evidence also discloses that there were no unpaid losses or expenses at the time of the levying of this assessment. Therefore, the assessment could not be justified as a matter of law on the ground that it was made "to pay accrued liabilities," because there were none; likewise it could not be so justified on the ground that it was for the purpose of "adding to or restoring the safety fund," because the company had no such fund, and the order making the assessment did not provide for any such fund. But the defendant argues that its Board had the authority to make the assessment "to meet anticipated needs of the company for

the ensuing period,'' and that its action in so doing, under the evidence, was a question of law and not one of fact to be submitted to the jury. Was it? On May 1, 1936, when this assessment was made, the defendant had on hand $12,656.86, after all ''bills and losses'' had been paid. That for the six months' period between May 1, 1935, and November 1, 1935, the losses were only $4131.51; and for the period between November 1, 1935, and May 1, 1936, the losses were $10,717.56; that for the full year from November 1, 1934, to November 1, 1935, the total losses and expenses were $13,747.04. The evidence did not clearly disclose the amount for each six months' period of that year. The defendant introduced its Exhibit No. 15, which was a compilation of its expenses and losses over the five-year period preceding the year of this assessment, and that disclosed that over such period the average expenses and losses had approximated $27,000 per year; however, this compilation was not before the Board in such form at the time the assessment was made, in fact it was made up after the filing of this suit, and the Secretary testified concerning their losses as follows:

''Our losses had decreased from year to year and was getting down to where we thought it wasn't necessary to make any other assessment; the last few years our losses had not been anything like they had prior to these last few assessment.''

While the evidence did disclose that the five-years' average expenses and losses had amounted to approximately $27,000, it also disclosed that at the close of its fiscal year 1931, the defendant had cash on hands of $186, and this amount increased each year until at the end of the fiscal year 1936, it had cash of $14,532.48; the defendant did not levy an assessment on November 1, 1936, the secretary testified ''we missed the assessment in November, 1936, because we had built up a surplus, up to where he thought we could go on and the assessment still be safe enough.'' He also testified ''In making assessment No. 75, I think we intended to add to the safety fund of $3500.''

Mr. Schmedding, President and Director of the defendant, testified concerning the matters discussed by the Board at the time the assessment was levied, and among other things, said: ''There was no certain period for making assessments. We made one when we felt like we needed it.''

We believe this is a sufficient discussion of the evidence concerning the financial condition of the defendant and the order made to determine the question of whether there was sufficient evidence to submit the question of the *necessity* for making the assessment in controversy.

It will be kept in mind that under the constitution and by-laws of the defendant the right and authority to levy an assessment arises only when ''it may be necessary'' for certain purposes therein designated. Certainly the Board of Directors are not the final arbiters of when the ''necessity'' exists. They cannot close the door of inquiry

to a member of a mutual company, such as the defendant. Under certain circumstances, the evidence may be so clear and convincing that reasoable minds cannot differ, and if so, the court should pass on the matter as a question of law; but is that the situation we have here: We think not. The financial condition of the defendant at the time of the assessment was such that reasonable minds might well differ on the question of the necessity for such an assessment, and if so, it becomes a question of fact to be submitted to the jury.

There are a number of appellate decisions in this State upholding the submission to the jury of the question of the legality of an assessment made by a mutual assessment company. Some of such cases are King v. Insurance Co., 133 Mo. App. 612; Johnson v. Hartford Life Ins. Co., 166 Mo. App. 261; Craig v. Insurance Co., 136 Mo. App. 6; but the defendant contends that the facts in those cases are distinguishable from the facts in this case. That is true to a certain extent. We seldom find two cases with the same set of facts, or so similar that they cannot be distinguished. But those cases do hold in effect that when there are disputed facts or a set of facts from which reasonable men could draw different inferences, then a question arises which should be submitted to the jury.

At the time this assessment was levied, the Board made no record entry of the reasons for the assessment, and while there was some oral testimony that the Board did orally discuss such reasons, nevertheless the court and jury were not bound to believe such oral testimony because the burden of proving this issue was on the defendant. [Vernon v. Farm Home and Life Association, 72 S. W. (2d) 827; Staehlin v. Major, 199 S. W. 427.] It is perfectly clear from the evidence that there was no necessity for making the levy to "pay accrued liabilities," because there were none. There was no evidence on the question of what the expenses were as a separate item; and, as the secretary testified, there was no safety fund as provided for in the constitution and by-laws, and under the order of the Board making this assessment, no safety fund was provided for. Therefore, can the assessment be said, as a matter of law, to be necessary "to meet anticipated needs for the ensuing period?" As stated above, the defendant had on hand more than $12,000 "to meet anticipated needs for the ensuing period," and that its losses during the past two or three years divided into six months' period had not amounted to such an amount; and the defendant's own evidence disclosed that the assessment was not necessary because its losses and expenses between May 1, 1936, and November 1, 1936, were much less than the amount on hand. We don't believe the evidence and the reasonable inferences to be drawn therefrom is so clear and convincing that reasonable minds may not differ.

The doctrine is universally recognized and applied that the law frowns upon forfeitures and the parties asserting the forfeiture must

prove every necessary element. In the case of Veasman v. Lois Mutual Aid Ass'n, 262 S. W. 392, the Springfield Court of Appeals clearly stated the principle we think is involved her, in the following language:

"Such an important matter as the levy of an assessment should not depend for establishment upon evidence other than the records. The law frowns upon forfeitures, and, before defendant could forfeit plaintiff's policy for failure to pay an assessment or levy, it must show that the assessment was legally made—that is, made according to the strict letter of its constitution and by-laws. Defendant failed to make such showing. [Stubbins v. State Farmers' Mutual Ins. Co. (Mo. App.), 229 S. W. 407; Logan v. Farmers' Mutual Fire Ins. Co. (Mo. App.), 226 S. W. 615, and cases there cited.]"

Under the evidence in this case, we do not believe the trial court would have been justified in declaring as a matter of law that the assessment of May 1, 1936, was legal; therefore, we hold that it was a question to be properly submitted to the jury, and as the defendant makes no objection to the form of the instruction submitting that question to the jury, that particular issue is not before us. It follows that the judgment should be affirmed. It is so ordered. All concur.